**SUTHERLAND REFINER CORPORA-
TION, Lionel N. Sutherland, and Doug-
las G. Sutherland, Plaintiffs,**

v.

**NORTH CAROLINA PULP COMPANY,
Incorporated, Defendant.**

**Civ. No. 287.**

United States District Court
E. D. North Carolina,
Washington Division.

Oct. 9, 1957.

Carl L. Bailey, Plymouth, N. C., Paul & Paul, Philadelphia, Pa., for plaintiffs.

Norman & Rodman, Plymouth, N. C., Marechal, Biebel, French & Bugg, Dayton, Ohio, for defendant.

GILLIAM, District Judge.

This is an action for infringement of United States Patent No. 2,591,106, issued to Daniel M. Sutherland on April 1, 1952, upon application filed July 24, 1947. The plaintiff, Sutherland Refiner Corporation of Trenton, New Jersey, is exclusive licensee under this patent, held in trust by the individual plaintiffs, Lionel M. Sutherland and Douglas G. Sutherland, for the plaintiff corporation. The trustees are sons of the patentee and are officers of the corporation of which their father is President. The defendant, North Carolina Pulp Company, is a corporation engaged in the manufacture of pulp and paper at Plymouth, North Carolina, where the alleged infringement occurred.

The plaintiffs' action was instituted in this court February 27, 1953. Both parties conducted extensive discovery proceedings. The defendant Pulp Company moved for summary judgment. There was before the Court at the date of hearing voluminous documentary material. Following two days of argument by counsel, the Court finds "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Rule 56, Fed.Rules Civ.Proc., 28 U.S. C.A.

Wood pulp for paper manufacture has long been made in the following sequence of steps. Small wood chips are first subjected to chemical action under steam pressure in a digester. A variety of chemicals are suitable for removing from wood the non-cellulose materials, which for convenience will be referred to as encrustants.. The pulp maker's choice depends on the kind of wood used and the type paper that is to be made from the pulp. The defendant's accused process utilizes a sulphate cook, known in the trade as the "kraft" system, which is particularly favored for Southern pine. However, the plaintiffs' patent is not limited to the use of a sulphate cook in the digester.

It is apparent that the degree of digestion may be controlled by three variables. These are temperature and pressure, a single factor because interdependent, time, and concentration of the chosen chemical in the cooking liquor.

When the desired cook is achieved, contents of the digester are drained—in the jargon of the trade, "blown"—into a receptacle called the blow tank. The blow tank is a container, generally several stories high, designed to accommodate the contents of several digesters. Such a tank is equipped with some type of agitator in order to maintain a uniform consistency. Pulp is drawn as required from the blow tank and run through a series of washing stages. From the washers, cooking liquor is recovered for repeated use. Washed pulp is passed through refiners before it reaches the paper machines.

Plaintiffs' patent recites that "in the papermaking art, it has heretofore been proposed to increase the yield of wood pulp by decreasing the degree of chemical action taking place in the digester. However, other difficulties encountered in the subsequent use of such 'high yield' pulps have led to an effort in the art to avoid rather than to encourage their production. The present invention is directed to the production of an improved paper pulp through a process which includes limiting the chemical action taking place in the digester below that normally employed, discharging the pulp thus digested into a blow tank and there reducing and controlling its consistency, and a special refining step in which the pulp, while still suspended in the hot cooking liquor, is subjected to the action of a refiner prior to washing or other removal of the hot cooking liquor from the pulp."

The claims setting out the metes and bounds of this allegedly novel process read as follows:

"1. In a process for making paper pulp from wood, the steps include heating pieces of wood immersed in alkaline cooking liquor to a temperature of about 340° F. at a pressure of about 110 pounds per square inch for about 55 minutes; then blowing the cooked wood and the cooking liquor to a blow tank and diluting the cook with hot alkaline wash liquor at about 160° to 180° F. In said blow tank to a consistency of about 3.25% fiber solids while maintaining the temperature at about 200° F.; and then refining the diluted cook at about 180° F. while suspended in the hot alkaline liquor.

"2. In a process for making paper pulp from wood, the steps of subjecting pieces of wood to the digesting action of hot alkaline cooking liquor at about 340° F. and at a pressure of about 110 pounds per square inch for a limited time interval sufficient only to soften the encrustant bond holding the cellulose fibers together without substantially separating the fiber bundles; blowing the limited cook thus obtained to a blow tank at a substantially atmospheric pressure; then diluting the cook to a refining consistency by addition of hot alkaline wash liquor at about 160° to 180° F.; refining the hot diluted pulp suspension thus obtained at about 180° to 210° F.; and then washing the refined pulp while hot, thereby obtaining the hot alkaline wash liquor used in diluting said cook.

"3. The process of claim 2 further characterized by the step of agitating said limited cook during the addition of said hot alkaline wash liquor.

"4. The process of claim 2 further characterized by maintaining the temperature of said limited cook in the temperature range from about 200° to about 220° F. during the addition of said hot alkaline wash liquor.

"5. The process of claim 2 further characterized by the step of removing tramp metals from said limited cook after the addition of said hot alkaline wash liquor and before said refining step."

No single element in Sutherland's process was new. Indeed most were standard usage in the pulping industry. Furthermore, it has been amply demonstrated by uncontrovertible evidence that long before Sutherland's application was filed, the combination process that he claims as his invention had been publicized and actually practiced with varying degrees of success. This most pertinent prior art escaped the attention of the Patent Office.

The greater success and acceptance of this old process, as practiced by the plaintiffs, has been due solely to the skillful adaptation of their refiner to the handling of hard pulp in hot cooking liquor. The Sutherland disc-type refiner was introduced in 1936, and was designed for conventional use between washer and paper machine. By D. M. Sutherland's own statement, adjustments in his refiner for hot stock processing consisted of widening the tolerance between discs, making the discs of harder steel, and adjusting the bearings to compensate for heat expansion attributable to the hot stock. These operations, in my opinion, while they evidence a high degree of mechanical skill, do not rise to the level of patentable invention, nor are they claimed as such.

Sutherland has created a new market for its concededly excellent refiner. This is a sufficient reward for having reinforced the weak link in the old high-yield pulping process.

I, therefore, hold that the plaintiffs' patent is invalid and the defendant is entitled to summary judgment as a matter of law.